IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LATRICIA NEWBERRY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00080 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.     Introduction**

Plaintiff Latricia Newberry brings this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Plaintiff protectively filed her application on November 30, 2009, alleging that she has been disabled since January 1, 2004.[2] (*PageID##* 166-69). She claims to be disabled due to a learning disability, Bipolar Disorder, Attention Deficit Hyperactivity Disorder, depression, and anxiety. (*PageID#* 192). After her application was denied during the initial administrative

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Under the controlling regulations, a Plaintiff cannot receive benefits for any period prior to the filing of his application for SSI benefits. 20 C.F.R. § 416.335.

proceedings, Plaintiff was provided a hearing before an Administrative Law Judge.  On September 11, 2012, ALJ Mary F. Withum issued a decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act and was therefore not eligible for SSI.  (*PageID##* 45-62).  The ALJ's decision and the resulting denial of benefits became the Social Security Administration's final decision.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply, (Doc. #13), the administrative record (Doc. # 6), and the record as a whole.

## II.    Background

### A.    Plaintiff's Testimony

Plaintiff was 18 years old at the time she filed her application for benefits.  Thus she is a "younger person" for purposes of resolving her SSI application.  *See* 20 C.F.R. § 416.963(c); *see also PageID##* 60, 177.  Plaintiff has a high school education, and past relevant work as a fast food worker and a daycare worker.  *See* 20 C.F.R. § 416.964(b)(4), *PageID##* 60, 75-76, 181, 193.

Plaintiff testified at the administrative hearing that she has held two jobs, one through the Job Center (which she emancipated out of) and the second as a fast-food worker (which lasted just over 30 days).  (*PageID#* 73).  She quit her fast-food job because she found it to be "very overwhelming."  (*Id.*).  She did not get along with her coworkers and the job duties were "too stressful" for her.  (*Id.*).

She takes mental health medications every morning, but they are only occasionally helpful. (*PageID##* 80-81). Plaintiff noted that depending on how severe her day is depends on when she takes her medication. (*PageID#* 80). Plaintiff also testified her mental health treatment was limited because her ex-fiancé would not allow her to go anywhere. (*PageID#* 81). She was unable to continue with mental health treatment due to transportation issues. (*PageID#* 83). Plaintiff explained to the ALJ that her stress level becomes elevated when she has tasks to do. (*PageID#* 82). She also has significant problems being around others. (*Id.*). She has panic attacks about 2 times per week where her mind races and she feels as if she cannot breathe. (*PageID#* 90). Plaintiff listens to calming music and performs breathing exercises to calm down. (*Id.*). It takes her 20 minutes or more to regain her composure. (*PageID#* 91). Sometimes Plaintiff's mother comes over to her house to help calm her down. (*PageID#* 91). Plaintiff described her relationship with her mother as "very unstable," and sometimes her mother will not talk to her. (*Id.*).

When asked about her daily activities, Plaintiff testified that when she wakes up in the morning, she takes a shower, reads, and listens to calming music (on days she has to go somewhere). (*PageID##* 84-85). On days when she leaves her home, she returns as quickly as possible and tries to stay away from other people as much as possible. (*PageID#* 85).

Plaintiff cooks, does laundry, and light housekeeping. (*Id.*). Her mother usually takes her shopping so that the shopping trip does not become too overwhelming. (*Id.*).

Her mother helps keep Plaintiff calm and focused.  (*PageID#* 87).  Plaintiff calls her mother on the phone a lot.  (*PageID##* 85-86).  She calls when her anxiety is high, generally at least 3 times per day.  (*PageID#* 87).

### B. Medical Evidence

The administrative record contains many medical records and opinions from Plaintiff's medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have summarized the relevant records concerning Plaintiff's impairments with citations to specific evidence.  The Commissioner likewise defers to the ALJ's factual recitation.

### III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,*

4

"substantial gainful activity," in Social Security lexicon.[3]  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Mary J. Withum applied the Social Security Administration's 5-Step sequential evaluation procedure.  *See* 20 C.F.R. § 416.920(a)(4)(I)-(v).  Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "Back/Neck Pain; Major Depressive Disorder (MDD); Bipolar; Post-Traumatic Stress Disorder (PTSD); and Anxiety (20 CFR 416.920(c))."  (*PageID#* 50).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings 1.04, 12.04 and 12.06.  (*PageID##* 51-52).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC)[4]:

> to perform medium work as defined in 20 CFR 416.967(c) except she can never climb ladders, ropes or scaffolds.  She should avoid all exposure to unprotected heights.  She is limited to frequent kneeling.  She is capable of performing work that is limited to 1- or 2- step tasks in an environment free of fast-paced production requirements with occasional decision-making and

---

[3] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 416.945(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

5

>workplace changes. She can have only occasional contact with supervisors, coworkers, and the public.

(*PageID#* 53). The ALJ also concluded at Step 4 that Plaintiff's "testimony of her symptoms and limitations appears to be exaggerated and extreme as to appear implausible." (*PageID#* 56). The ALJ found "the credibility of the claimant's allegations is seriously impaired." (*PageID#* 57).

The sum and substance of the ALJ's sequential evaluation ultimately led her to conclude that Plaintiff was not under a benefits-qualifying disability. (*PageID#* 62).

## IV.   Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of

"more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.     Discussion**

    **A.     The Parties' Contentions**

Plaintiff argues the ALJ erred by inappropriately discounting the opinion of the consulting examiner, Dr. Bonds.  (Doc. # 8, *PageID##* 714-16).  According to Plaintiff, the ALJ afforded greater weight to the opinions of non-examining state agency reviewers who had access to only a portion of the medical evidence.  (*Id.*, *PageID##* 716-18). Plaintiff also contends the ALJ failed to properly craft a RFC that fairly accounts for all of her mental health related limitations.  (*Id.*, *PageID##* 718-20).  Finally, Plaintiff argues that the ALJ's adverse credibility findings are not reasonably supported.  (*Id., PageID##* 720-23).

7

Conversely, the Commissioner contends the ALJ did not commit reversible error in how she weighed the medical evidence, medical opinions, and Plaintiff's testimony. The Commissioner further argues the ALJ was justified in determining that Plaintiff was capable of performing a significant number of jobs in the national economy. Accordingly, the Commissioner asserts the ALJ's decision should be affirmed. (Doc. # 12, *PageID##* 736-43).

**B.      Analysis**

In order to determine whether the ALJ acted properly in disagreeing with a medical source, the Court must first determine the medical source's classification. Of the three types of medical sources – nonexamining sources, nontreating (but examining) sources, and treating sources – Dr. Bonds was the second. *See* 20 C.F.R. § 416.902; *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007) ( "A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [her].").

The Social Security Administration gives the most weight to opinions from a claimant's treating source; accordingly, an ALJ is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." (*Id.*). However, this requirement only applies to *treating* sources. (*Id.* at 876). With regard to nontreating, but examining, sources, the agency will "[g]enerally [ ] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. 20 C.F.R. §

8

416.927(c)(1); *see also Smith,* 482 F.3d at 875. Because Dr. Bonds should not have been afforded controlling weight, in order to determine how much weight to give Dr. Bonds' opinions, the Regulations required the ALJ to consider several factors – supportability, consistency, specialization, etc. – described in 20 C.F.R. §416.927(c).

Dr. Bonds performed a consultative psychological examination at the request of the Ohio Bureau of Disability Determination on May 12, 2010. (*PageID##* 419-27). On mental status examination, Dr. Bonds noted Plaintiff was pleasant and cooperative. (*PageID#* 421). Plaintiff reported to Dr. Bonds that "she is unable to work because she cannot handle stress well and does not like to be around people. She also has a learning disability that limits her ability to work." (*Id.*). Dr. Bonds noted Plaintiff "seemed nervous and tense during the interview" and "clasped her hands together tightly." (*PageID#* 422). Dr. Bonds found Plaintiff has some insight and understanding of her problems. (*Id.*). Plaintiff told Dr. Bonds she was often very anxious and fearful around others, and she tended to isolate herself or frequently get into conflicts. (*PageID#* 424).

As to her daily activities, Plaintiff related that she did some house cleaning, cooked for herself, helped her friend's son off the bus and assisted him with his homework, bought groceries, and used a computer. (*PageID##* 422-23).

She was diagnosed with major depressive disorder, Post-Traumatic Stress Disorder, and borderline intellectual functioning. (*PageID#* 425).

Dr. Bonds opined that Plaintiff was markedly impaired in her mental abilities to relate to peers, supervisors, or the public; she is very anxious and fearful of being around

9

people; she loses her temper easily; she has a history of fighting and frequently being in conflicts with others; and she would have difficulty taking criticism, working with the public or being around people. (*PageID#* 425). Dr. Bonds also found that Plaintiff was markedly impaired in her ability to withstand the stress and pressures associated with day-to-day work activities, noting she has low-frustration tolerance. She has very unstable moods and would have difficulty meeting work demands for speed, accuracy and productivity and for getting along with other workers. (*PageID#* 426).

In her decision, the ALJ provided "little weight" to Dr. Bonds' opinion, finding as follows:

> I give little weight to the opinion of consulting psychologist Giovanni M. Bonds, PhD because the opinion is inconsistent with the claimant's presentation, history, and activities of daily living. Based on psychological evaluation including mental status examination and assessment of intellectual functioning, Dr. Bonds opined the claimant is "markedly" impaired in her mental ability to relate to others and withstand the stress and pressure associated with day-to-day work activities. Dr. Bonds apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all of what the claimant reported. The claimant reported being very anxious and fearful of being around being [sic], easily losing her temper, low frustration tolerance, unstable moods, difficulty taking criticism, difficulty working with the public or being around people. Yet, during the psychological evaluation, the claimant was pleasant and cooperative during the evaluation and during the intellectual testing and mental status exam, she maintain [sic] satisfactory attention and concentration. Moreover, the claimant working [sic] at a daycare (summer job) through Youth Works with no reported difficulties. In addition, she reported that she attends church weekly (Exhibit 6F). The claimant's activities tends to suggest that the symptoms may not have been as limiting as the claimant as [sic] alleged. Thus, Dr. Bond's [sic] opinion appears to contain inconsistencies, and the doctor's opinion is accordingly rendered less persuasive.

(*PageID#* 59).

10

A review of the record indicates the ALJ's weighing of Dr. Bonds' opinion is not supported by substantial evidence. The ALJ characterized Dr. Bonds' opinion as "inconsistent with the claimant's presentation, history, and activities of daily living," *id.,* yet this finding is inaccurate and unsupported by the record. Plaintiff was nervous and tense during the interview with Dr. Bonds. She clasped her hands together tightly. She reported being bothered by memories of being mentally, physically, and sexually abused by her family. She indicated she withdraws and isolates herself from people. (*PageID#* 422). This information in Dr. Bonds' report supports her opinions. The record also contains reports of abuse and details of Plaintiff's mental health issues since childhood. (*PageID##* 253-56, 282-97, 340-43, 452-79, 529, 635-56). Plaintiff was psychiatrically hospitalized in October 2005, July 2005, December 2006, December 2008, and June 2009, following multiple suicide attempts. (*PageID##* 486-505, 510-55, 558-76). At the time she was hospitalized in June 2009, she was spotted by police standing on a bridge crying and informed officers she intended to jump. (*PageID##* 561-76).  This tends to support, rather than detract from, Dr. Bonds' opinion. It appears the ALJ relied significantly on the fact Dr. Bonds noted Plaintiff was "pleasant" during the examination as evidence to support her conclusion that Dr. Bonds' opinion was inconsistent with Plaintiff's presentation, history, and activities of daily living. As Plaintiff correctly notes, however, a claimant's ability to be "pleasant" during a psychological examination is not evidence adverse to a marked mental work limitation. *See Vaughn v. Comm'r of Soc. Sec.,* U.S. Dist. LEXIS 21889, *23 (S.D. Ohio February 21, 2014) (Black, D.J.) ("Even if,

however, Plaintiff happened to be "pleasant" during her meetings with Dr. Bonds, the relevant inquiry is Plaintiff's ability to maintain social functioning on a sustained basis, not during singular examinations.")(citing *Gayheart*, 710 F.3d at 378).  Thus, the ALJ's reliance on such a point in this case was improper.

Similarly, the ALJ's reliance on the fact Dr. Bonds accepted Plaintiff's subjective complaints is also misplaced.  *See PageID#* 59.  By doing so, the ALJ appears to neglect to take into account the very nature of mental health issues.  As the Sixth Circuit has explained:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices ... in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Brown*, 874 F.2d 1116, 1121 (6th Cir. 1989)(quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)(other citation omitted)).  Psychiatrists often diagnose mental disorders after only one interview.  *Blankenship*, 874 F.2d at 1121.

The ALJ's finding that Plaintiff's activities of daily living detract from Dr. Bonds' conclusion also lacks substantial supporting evidence in the record.  For example, the ALJ incorrectly determined that Plaintiff worked a job through Youth Works at a daycare

"with no reported difficulties," however, the record indicates otherwise: Plaintiff specifically stated "she had to take a lot of breaks on the job." (*PageID#* 420). The ALJ also improperly relied upon the fact Plaintiff attends church weekly to imply that her symptoms are not as limiting as she contends. As in *Gayheart*, 710 F.3d at 377, "the ALJ does not contend, and the record does not suggest, that [plaintiff] could do any of these activities on a *sustained basis*, which is how the functional limitations of mental impairments are to be assessed." (emphasis in original)(citing 20 C.F.R. § 404.1520a(c)(2)); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.00 ("Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.")).

Even if these findings by the ALJ were somehow supported by the record, the ALJ nonetheless further erred by failing to properly consider the supportability of Dr. Bonds' conclusions, their consistency with other evidence in the record, and her specialization in psychology. *See* 20 C.F.R. §§ 404.1527(c)(3)-(5).

Accordingly, for the reasons stated above, Plaintiff's Statement of Errors is well taken.[5]

## VI. Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that

---

[5] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is presently unwarranted.

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F3d at 746.  Remand warranted by an ALJ's failure to follow the regulations arises, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041.  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak.  *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant

14

to sentence 4 of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to: (1) re-evaluate the record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Latricia Newberry was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence 4 of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

July 16, 2015

                s/Sharon L. Ovington
                Sharon L. Ovington
            Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985);  *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).